# EXHIBIT "1"

432971

COPY

**SUMMONS**     **BY FAX**

*(CITACION JUDICIAL)*

SUM-100

| | |
|---|---|
| | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

DEC 21 2018

SPECIALIZED LOAN SERVICING, LLC;
   ("Additional Parties Attachment and form is attached"))

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

DEC 19 2018

V. Alvarado

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ARNELL PARKER AND SHAMONA BOKELMAN

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Riverside County Superior Court | CASE NUMBER:<br>*(Número del Caso):*<br>**RIC**   **1827377** |
|---|---|

Riverside Historic Courthouse
4050 Main Street   Riverside, California 92501

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Tony Cara, Esq./ CDLG, PC/ 2973 Harbor Blvd, Suite 594/ Costa Mesa, CA 92626/ Tel: (888) 615-6765

| DATE:<br>*(Fecha)* **DEC 19 2018** | Clerk, by<br>*(Secretario)* **V. ALVARADO** | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* QUALITY LOAN SERVICE CORPORATION;

   under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 12-21-18

[SEAL]

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Page 1 of 1<br>Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| _ PARKER; et al v. SPECIALIZED LOAN SERVICING, LLC; et al. | RIC 1827377 |

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

BAC HOME LOANS SERVICING, LLC; QUALITY LOAN SERVICE CORPORATION; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC; and DOES 1-10, inclusive,

Page <u>1</u> of <u>1</u>

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
4050 Main Street
Riverside, CA 92501
www.riverside.courts.ca.gov

NOTICE OF CASE MANAGEMENT CONFERENCE

PARKER-BOKELMAN VS SPECIALIZED LOAN

CASE NO. RIC1827377

The Case Management Conference is scheduled for 06/19/19 at 8:30 in Department 01.

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case. CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

Requests for accommodations can be made by submitting Judicial Council form MC-410 no fewer than five court days before the hearing. See California Rules of Court, rule 1.100.

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding. In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence. Such correspondence is deposited in the outgoing mail of the Superior Court. Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business. I certify that I served a copy of the foregoing NOTICE on this date, by depositing said copy as stated above.

Court Executive Officer/Clerk

Date: 12/19/18

by: _____

VANESSA ALVARADO , Deputy Clerk

cmcnlb
5/25/18

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
4050 Main Street
Riverside, CA 92501
www.riverside.courts.ca.gov

## NOTICE OF DEPARTMENT ASSIGNMENT

PARKER-BOKELMAN VS SPECIALIZED LOAN

CASE NO. RIC1827377

This case is assigned to the HONORABLE Judge Irma Poole Asberry in Department 03 for Law and Motion purposes only.

The case is assigned to Honorable Judge Irma Asberry in Department 1 for case management hearings (Case Management Conferences, Order to Show Causes, Status Conferences and Trial Setting Conferences).

Any disqualification pursuant to CCP section 170.6 shall be filed in accordance with that section.

The court follows California Rules of Court, Rule 3.1308(a)(1) for tentative rulings (see Riverside Superior Court Local Rule 3316). Tentative Rulings for each law and motion matter are posted on the Internet by 3:00 pm on the court day immediately before the hearing at <http://riverside.courts.ca.gove/tentativerulings.shtml>. If you do not have Internet access, you may obtain the tentative ruling by telephone at (760) 904-5722.

To request oral argument, you must (1) notify the judicial secretary at (760) 904-5722 and (2) inform all other parties, no later than 4:30 pm the court day before the hearing. If no request for oral argument is made by 4:30 pm, the tentative ruling will become the final ruling on the matter effective the date of the hearing.

The filing party shall serve a copy of this notice on all parties.

Requests for accommodations can be made by submitting Judicial Council form MC-410 no fewer than five court days before the hearing. See California Rules of Court, rule 1.100.

## CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding. In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence. Such correspondence is deposited in the outgoing mail of the Superior Court. Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business. I certify that I served a copy of the foregoing NOTICE on this date, by depositing said copy as stated above.

Court Executive Officer/Clerk

Date: 12/19/18                     by: _____

VANESSA ALVARADO, Deputy Clerk

CNDALM
12/7/18

COPY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

| | | |
|---|---|---|
| ☐ BANNING 311 E. Ramsey St., Banning, CA 92220 | ☐ MURRIETA 30755-D Auld Rd., Suite 1226, Murrieta, CA 92563 | |
| ☐ BLYTHE 265 N. Broadway, Blythe, CA 92226 | ☐ PALM SPRINGS 3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262 | |
| ☐ HEMET 880 N. State St., Hemet, CA 92543 | ☒ RIVERSIDE 4050 Main St., Riverside, CA 92501 | |
| ☐ MORENO VALLEY 13800 Heacock St., Ste. D201, | ☐ TEMECULA 41002 County Center Dr., #100, Temecula, CA 92591 | |
| Moreno Valley, CA 92553 | | RI-030 |

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar Number and Address):
Tony Cara, Esq.,
CDLG, PC
2973 Harbor Boulevard, Suite 694
Costa Mesa, CA 92626-3912
TELEPHONE NO: (888) 615-6765   FAX NO. (Optional): (888) 660-8874
E-MAIL ADDRESS (Optional): cdlglawyer@gmail.com
ATTORNEY FOR (Name): Plaintiff, Arnell Parker

PLAINTIFF/PETITIONER: ARNELL PARKER; et al

DEFENDANT/RESPONDENT: SPECIALIZED LOAN SERVICING, LLC; et al.

FOR COURT USE ONLY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

DEC 19 2018

V. Alvarado

CASE NUMBER:
RIC   1827377

CERTIFICATE OF COUNSEL

The undersigned certifies that this matter should be tried or heard in the court identified above for the reasons specified below:

☐   The action arose in the zip code of: _____

☒   The action concerns real property located in the zip code of:   92557 _____

☐   The Defendant resides in the zip code of: _____

For more information on where actions should be filed in the Riverside County Superior Courts, please refer to Local Rule 1.0015 at www.riverside.courts.ca.gov.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date   December 18 , 2018 _____

Tony Cara, Esq. _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)   ▶ _____
(SIGNATURE)

Page 1 of 1
Local Rule 1.0015
riverside.courts.ca.gov/localforms/localforms.shtml

Approved for Mandatory Use
Riverside Superior Court
RI-035 [Rev. 05/19/13]

CERTIFICATE OF COUNSEL

COPY

CM-010

| | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Tony Cara, Esq. SBN 170720 / Peter Nisson, Esq. SBN 62276
CDLG, PC
2973 Harbor Boulevard, Suite 594
Costa Mesa, CA 92626
TELEPHONE NO.: (888) 615-6765   FAX NO.: (888) 660-8874
ATTORNEY FOR *(Name)*: Plaintiffs, Arnell Parker; et al

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS: same
CITY AND ZIP CODE: Riverside 92501
BRANCH NAME: Riverside Historic Courthouse

CASE NAME:
PARKER; et al v. SPECIALIZED LOAN SERVICING, LLC; et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: RIC 1827377 |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

BY FAX

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | Real Property | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | |
| Non-PI/PD/WD (Other) Tort | [ ] Wrongful eviction (33) | Enforcement of Judgment |
| [ ] Business tort/unfair business practice (07) | [✓] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | Unlawful Detainer | Miscellaneous Civil Complaint |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | Miscellaneous Civil Petition |
| [ ] Professional negligence (25) | Judicial Review | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| Employment | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve      e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence      f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify)*: 5
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 18, 2018
Tony Cara, Esq.
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:170720 | FOR COURT USE ONLY |
|---|---|

CDLG, PC; Tony Cara, Esq.
2973 Harbor Blvd, Suite 594, Costa Mesa, CA 92626
TELEPHONE NO.: 888-615-6765   FAX NO. *(Optional)*: 888-660-8874
E-MAIL ADDRESS *(Optional)*: cdlglawyer@gmail.com
ATTORNEY FOR *(Name)*: Plaintiff

FOR COURT USE ONLY:
Filed 12/20/18
COPY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Riverside, 92501
BRANCH NAME: Riverside Historic Courthouse

PLAINTIFF/PETITIONER: ARNELL PARKER AND SHAMONA BOKELMAN
DEFENDANT/RESPONDENT: SPECIALIZED LOAN SERVICING, LLC; et al.

| REQUEST FOR DISMISSAL | CASE NUMBER: RIC1827377 |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice   (2) ☑ Without prejudice
   b. (1) ☑ Complaint   (2) ☐ Petition
      (3) ☐ Cross-complaint filed by *(name)*:                on *(date)*:
      (4) ☐ Cross-complaint filed by *(name)*:                on *(date)*:
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☑ Other *(specify)*:* as to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

2. *(Complete in all cases except family law cases.)*
   The court ☐ did ☑ did not waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: 12/20/2019

Tony Cara, Esq.
(TYPE OR PRINT NAME OF ☑ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                (SIGNATURE)

*If dismissal requested is of specified parties only or specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
☑ Plaintiff/Petitioner   ☐ Defendant/Respondent
☐ Cross-Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
   Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                (SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner   ☐ Defendant/Respondent
☐ Cross-Complainant

*(To be completed by clerk)*
4. ☐ Dismissal entered as requested on *(date)*:
5. ☐ Dismissal entered on *(date)*:                as to only *(name)*:
6. ☐ Dismissal **not entered** as requested for the following reasons *(specify)*:

7. a. ☐ Attorney or party without attorney notified on *(date)*:
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed   ☐ means to return conformed copy

Date:                          Clerk, by _____, Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courts.ca.gov

CIV-110

| PLAINTIFF/PETITIONER: ARNELL PARKER AND SHAMONA BOKELMAN | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: SPECIALIZED LOAN SERVICING, LLC; et al. | RIC1827377 |

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**
If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

### Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below):*
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one):* ☐ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____     ▶ _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)          (SIGNATURE)

COPY

CDLG, PC
Tony Cara, Esq., SBN 170720
Peter Nisson, Esq., SBN 62276
2973 Harbor Boulevard, Suite 594
Costa Mesa, CA 92626-3912
Phone: (888) 615-6765
Fax: (888) 660-8874
cdlglawyer@gmail.com

Attorney for Plaintiffs, Arnell Parker and Shamona Parker- Bokelman

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

DEC 1 9 2018

V. Alvarado

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE, CENTRAL DISTRICT

SHAMONA PARKER- BOKELMAN and
ESTATE OF ARNELL PARKER

               Plaintiffs,

v.

SPECIALIZED LOAN SERVICING, LLC;
BAC HOME LOANS SERVICING, LLC;
QUALITY LOAN SERVICE
CORPORATION; and DOES 1-10,
inclusive,

               Defendants.

CASE NO.: RIC    1 8 2 7 3 7 7

PLAINTIFFS' COMPLAINT FOR:

1. WRONGFUL FORECLOSURE;
2. BREACH OF CONTRACT;
3. BREACH OF GOOD FAITH AND FAIR DEALING;
4. FRAUD/INTENTIONAL MISREPRESENTATION;
5. PROMISSORY FRAUD;
6. VIOLATION OF HOMEOWNER BILL OF RIGHTS 2923.11;
7. NEGLIGENCE;
8. VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA) CAL. CIV. CODE §§ 1788 – 1788.32;
9. RESPA;
10. EMOTIONAL DISTRESS;
11. UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF. CODE § 17200, ET SEQ.;
12. CANCELLATION OF WRITTEN INSTRUMENTS, CIV. CODE § 3412;
13. NEGLIGENT MISREPRESENTATION;
14. WRONGFUL EVICTION

BY FAX

CDLG, PC, Tony Cara, Esq.,
2973 Harbor Boulevard, Suite 594, Costa Mesa, CA 92626-3912. Phone: (888) 615-6765

**COMES NOW**, SHAMONA PARKER- BOKELMAN and ESTATE OF ARNELL PARKER ("PLAINTIFFS"), by and through her counsel alleges as follows:

**PARTIES**

1.      PLAINTIFFS are, and at all relevant times mentioned herein was a resident of Riverside County, California, and are the rightful and lawful owners of real property commonly known as 23757 Swan Street, Moreno Valley, California, 92557 ("Subject Property"), and is her personal residence.

2.      Defendant Specialized Loan Servicing, LLC ("SLS DEFENDANT") is a limited liability company with its principal place of business in Highland Ranch, Colorado. SLS DEFENDANT conducts, and at all times mentioned herein conducted, business in Riverside County, California. Its agent for service of process is United Agent Group, Inc. SLS DEFENDANT is the purported current loan servicer of the mortgage loan that is the subject of the allegations complained of herein.

3.      Defendant BAC Home Loan Servicing, LLC ("BofA" DEFENDANT") is a limited liability company with its principal place of business in Charlotte, North Carolina. BofA DEFENDANT conducts, and at all times mentioned herein conducted, business in Riverside County, California. Its agent for service of process is CT Corporation. BofA DEFENDANT is the purported current loan beneficiary that is the subject of the allegations complained of herein.

4.      Defendant Quality Loan Service Corporation ("QUALITY DEFENDANT") is a corporation with its principal place of business in San Diego, California. QUALITY DEFENDANT conducts, and at all times mentioned herein conducted, business in Riverside County, California. Its agent for service of process is Boulet Louvan at the corporate office. QUALITY DEFENDANT is the purported current beneficiary of the mortgage loan that is the subject of the allegations complained of herein.

5.      Defendant Mortgage Electronic Registration Systems, Inc. ("MERS DEFENDANT") is a corporation with its principal place of business in Reston, Virginia. MERS DEFENDANT conducts, and at all times mentioned herein conducted, business in Riverside County, California. Its agent for service of process is CT CORPORATION. MERS DEFENDANT is the purported agent and

2

1  beneficiary that is the subject of the allegations complained of herein.

2      6.      PLAINTIFFS are ignorant of the true names and capacities of Defendants DOES 1-10,

3  inclusive, and therefore sues them by fictitious names. PLAINTIFFS will amend this complaint to

4  allege DOES' true names and capacities when they are ascertained.

5      7.      PLAINTIFFS' alleges that DOES 1-10 claim some right, title, estate, lien or interest in

6  the Subject Property, adverse to PLAINTIFFS' own title. Each of these claims constitutes a cloud on

7  PLAINTIFFS' title to the Subject Property from which they seeks relief.

8      8.      PLAINTIFFS' alleges that DOES 1-10 are contractually, strictly, negligently,

9  intentionally or vicariously liable and/or otherwise legally responsible in some manner for each and

10  every act, omission, obligation, event or happening set forth in this complaint, and that DOES 1-10 are

11  indebted to PLAINTIFFS' as hereinafter alleged.

12

13  **JURISDICTION AND VENUE**

14      9.      Jurisdiction of this Court arises under *Cal. Const. Art. VI §10* and *Code Civ.Proc.*

15  §410.10 et seq. because DEFENDANTS engaged in business in the State of California and the acts of

16  wrongdoing alleged in this complaint occurred in California. DEFENDANTS have more than

17  "sufficient minimum contacts" within the State of California such that this Court's exercise of personal

18  jurisdiction over DEFENDANTS herein "does not offend the traditional notions of fair play and

19  substantial justice." DEFENDANTS herein purposefully directed their activities to the State of

20  California and consummated a transaction with a resident of the State of California, such as Plaintiff

21  herein. As a result, DEFENDANTS caused an event or events to occur in California, and more

22  particularly in Riverside County, out of which this action arises and which forms the basis of this

23  action.

24      10.     Venue is proper in this Court pursuant to *Code Civ.Proc.* § 392(a) because

25  DEFENDANTS' liability to Plaintiff arose within the jurisdictional region of this Court. This Court has

26  jurisdiction over the parties. PLAINTIFF is a resident of Moreno Valley, California. All

27  DEFENDANTS regularly engage in business within Riverside County, California, and the real property

28  is located in Moreno Valley, California.

11.    PLAINTIFFS' are suing for damages that are related to violation various California statutes and the Homeowner Bill of Rights Act wherein the amount of controversy is approximately $75,000.00 and/or according to proof.

12.    Plaintiffs are informed and believe and upon this basis allege that Defendants, and each of them are, and at all times herein, were the agents, joint ventures, officers, members, representatives, consultants or employees of their co-Defendants and in committing the acts herein alleged, were acting within the scope of such affiliation with knowledge, permission, consent or subsequent ratification of their co-Defendants.

<u>GENERAL AND FACTUAL ALLEGATIONS</u>

13.    PLAINTIFFS are informed and believe and upon this basis allege that Defendants, and each of them are, and at all times herein, were the agents, joint ventures, officers, members, representatives, consultants or employees of their co-Defendants and in committing the acts herein alleged, were acting within the scope of such affiliation with knowledge, permission, consent or subsequent ratification of their co-Defendants.

14.    PLAINTIFFS' alleges that on or about November 6, 2006, PLAINTIFFS obtained a mortgage loan on the Subject Property from Greenlight Financial Services in the amount of $169,000, memorialized by a Deed of Trust. The maturity due date is on November 1, 2016. The Trustee is LSI, Chicago Title Insurance. This Deed of Trust was recorded in the Riverside County Recorder's Office as Instrument No. 2006-0815791. **(Exhibit "A" - Deed of Trust)** MERS DEFENDANT is a separate corporation acting as beneficiary solely as a nominee for Lender and its successors and assigns under the security instrument, organized and existing under the laws of Delaware, the authorized agent for Greenlight Financial Services, the purported beneficiary of the Note and Deed of Trust, and at all times herein mentioned was acting in the course and scope of the authority authorized by the Principal. See Civ. Code § 2337.

4

15.    On or about June 5, 2008 BofA announced it had received approval from the Board of Governors of the Federal Reserve System to purchase Countrywide Financial Corporation.

16.    On or about December 29, 2008 Arnell Parker received a letter from Countrywide Home Loans offering to modify her loan so long as she signed and returned the loan modification forms, modifying her mortgage payment from $1,189.95 to approximately $880.46 this would be accomplished per the offer by,

> "reducing your current interest rate to 3.99% for the remaining term of the loan; extending the term for repayment period to 40 years. Your new maturity date will be February 1, 2049; and bring your loan to a current status"

**See Exhibit "B"**.

17.    PLAINTIFF Arnell Parker proceeded to comply with the conditions of the offer and returning the executed modification agreement.

18.    Plaintiff received the executed loan modification agreement, with a yearly interest rate of 3.99%, and a monthly mortgage payment of $708.52 (principal & interest) beginning on March 2009, with a loan balance of $169,780.62. **See Exhibit "C"**.

19.    Plaintiff Arnell Parker began making her new mortgage payments pursuant to the executed loan modification.

20.    After the merger was completed, Plaintiff Arnell Parker began sending her payments to Bank of America pursuant to a letter she received advising of same.

21.    Upon receiving mortgage statements, PLAINTIFFS realized that the payments Arnell Parker was sending were not showing on the mortgage statement as being applied to the account. Thus, each month the payments were being cashed but not being applied.

22.    PLAINTIFF's daughter Shamona Parker, who is a joint title holder with now deceased mother Arnell Parker, called the BofA to inquire regarding why the mortgage payments were not showing as applied on the mortgage statement.

23.    Parker spoke with several BofA agents over the phone on several different occasions regarding this accounting issue and they all advised that due to the merger, the account was not yet set up in the "system", but to simply keep making the payment, and everything would be taken care of. The payments would eventually show as being applied.

5

24.   Plaintiff Shamona Parker was becoming very frustrated an mother Arnell Parker, was worrying that the processing was taking so long, they called again, and told once again, "not to worry, they had the payments and it was just an accounting issue, that would be resolved shortly", Plaintiffs' plainly asked whether this issue would have any impact on the mortgage showing as delinquent and whether this would cause any foreclosure process. Plaintiffs were told that would not happen, because their (BofA) system showed the payments received and cashed, so this would not be flagged for any delinquency, again they were reassured that the merger was affecting many borrowers, but it would be taken care of.

25.   PLAINTIFFS continued making payments, upon the assurances that the payments would eventually show as applied, once the loan modification agreement was processed with the file from Countrywide.

26.   Almost 1 year passed by, and the payments were still not showing as applied but were being accepted and cashed by BofA.

27.   In early 2010, PLAINTIFFS received notification that the loan was in default in excess of $20,000.

28.   PLAINTIFFS were in shock upon receipt of B of A's letter of intention to accelerate and foreclose. How could this be? Plaintiffs had been assured on more than a dozen occasions that they would NOT be prejudiced by this accounting issue.

29.   PLAINTIFFS once again called the BofA, this time they were told the payments that had been made for over a year were in a suspense account, and it appeared the loan modification agreement that had been executed, was not being honored. BofA gave no further explanation and simply stated they were sorry for the inconvenience but they would have to figure out how to bring the account current.

30.   PLAINTIFF did not understand what was going on, how it could take one full year for Bank of America to make this finding. Moreover, what happened to the year worth of payments? They were not returned and they were not applied. BofA, simply brushed the problem off as it being Countrywide's issue, not there's.

31.     Even if the loan modification was rejected, albeit still a breach of contract by Bank of America, PLAINTIFFS would not have been $20,000 in arrears, as they were  making payments every month, in excess of $850.

32.     The collection representative with BofA advised Plaintiff, there was nothing that could be done, and they had to find the funds to bring it current, or the home would sell in foreclosure sale.

33.     On or about February 2010, PLAINTIFF was offered a trial period payment to bring her "current".

34.     PLAINTIFF Parker received her mortgage statement dated March 2010, stating, "you are currently participating in a Home Affordable Modification Trial Period Plan. During this Trial Period, you may make your monthly payments at the Trial Period monthly payment amount, which is $862.01 instead of the amount shown on this statement. You will continue to receive monthly statements during your Trial Period Plan that will show the payment amount based on your original home loan agreement as your original loan remains in effect and unchanged during the trial period. You will be notified once we have determined your eligibility for a permanent loan modification". (See Exhibit "D"---mortgage statement at page 3).

35.     Plaintiffs Arnell Parker and Shamona Parker called BofA regarding the trial period received, they were told to make those payments, and this would take care of the $20,000 delinquency. Again PLAINTIFFS asked about the payments that had already been made pursuant to the loan modification, which was apparently not being honored. BofA representative retorted, to just follow the trial period, or they would lose their home.

36.     PLAINTIFF Arnell Parker made a trial payment in the amount requested, and this payment was cashed. **See Exhibit "E".**

37.     Arnell Parker called Bank of America, and asked about the missing year payments she had made and to confirm her first TPP payment was made, after which time she was told not to make anymore TPP payments, without any reason what-so-ever, she no longer qualified.

38.     **Plaintiffs** were every upset at this, and escalated the matter to Bank of America but were told nothing could be done and to apply for another loan modification, but the home could still be sold.

39.     An elderly lady, Mrs. Arnell Parker was very scared, not wanting to lose her home, thus she took the funds from her 401k, and paid the delinquency of over $21,000. (See Exhibit "N" at page 4)

7

40. A notice of rescission was filed by BofA on August 11, 2011 of the April 11, notice of Default as consequence of Mrs. Arnell Parker making the alleged delinquency payment. (See Exhibit "O")

41. PLAINTIFFS' alleges that on April 7, 2011, an Assignment of the Deed of Trust was recorded in the Riverside County Recorder's Office as Instrument No. 2011-0154502. This assignment purported to assign the Deed of Trust from MERS DEFENDANT to BAC Home Loan Servicing, LP. **(See Exhibit "F" – Assignment of Deed of Trust)**

42. PLAINTIFFS' alleges that on April 8, 2011, a Substitution of Trustee was recorded in the Riverside County Recorder's Office as Instrument No. 2011-0156341. This Substitution purported to replace LSI, Chicago Title Insurance with QUALITY DEFENDANT, and to assign rights to act under the Deed of Trust. **(See Exhibit "G" -- Substitution of Trustee)**

43. On or about November 2016, Arnell Parker dies of pulmonary complications.

44. Plaintiff Shamona Parker grieved with the loss of her mother, and with the expenses of the funeral, got behind on the mortgage payments.

45. Plaintiff Shamona Parker called Bank of America to inform them that her mother Arnell, had passed away, and that she would not be able to afford the payment on her own for a few months, until she received the proceeds from her mother's life insurance policy.

46. Plaintiff Shamona Parker was on fixed disability income and without her mother Arnell's income would be unable to make the full payment.

47. Moreover, Shamona Parker once again inquired regarding the payments that had been made and never applied from 2010. The BofA agent advised, they could not address that issue, and moreover could not speak with her until they received a copy of the death and birth certificate.

48. To add insult to injury, BofA continued to add foreclosure fees, penalties, and late fees to her mortgage, without a slight mention of the unapplied payments that had been made.

49. According to the terms of Bank of America's note, Bank of America is obligated to return any unapplied funds to the borrower immediately prior to foreclosure or they have the option of applying the funds even if they are deemed insufficient to bring the loan current. Specifically, the agreement provides, in part:

Lender may hold such unapplied funds until the Borrower makes payment to bring the loan current. If the Borrower does not do so within a reasonable time, *Lender shall either apply such funds or return them to borrower*. If not applied earlier, such funds will be applied to the outstanding principal balance under the note immediately prior to foreclosure.

Emphasis added. See, e.g., Plaintiff's Mortgage at page 3 of 12 attached as **Exhibit "H".**

50.     DEFENDANTS did not return or apply the year worth of mortgage payments she made under the loan modification Plaintiff believed was in effect. The unapplied fees were in excess of $10,200.

51.     PLAINTIFF Shamona Parker faxed over a copy of same to BofA in furtherance of being able to discuss the loan and the delinquency. **(See Exhibit "I" copy of death and birth).**

52.     Plaintiff Shamona  Parker called BofA to confirm receipt of the death and birth certificate that had been requested, she was told it was received but she would need to go through probate in order to discuss the loan, that until that was done nothing more could be done.

53.     Plaintiff Shamona Parker was now three payments delinquent. She sent in January or February 2017 payment, but this payment was returned.

54.     **Plaintiff** Shamona Parker sent a complete loan modification application to BofA, but they would not review it without probate documents even though Shamona Parker was on title, and had always been on title.

55.     The loan was then transferred to Specialized Loan Servicing, shortly thereafter.

56.     PLAINTIFFS' allege that BofA DEFENDANT transferred the file to SLS DEFENDANT, and PLAINTIFFS had to start all over, without offering any alternative foreclosure options, and continuing to fight with PLAINTIFF in California probate court.

57.     **On or about** March 2018, Plaintiff Shamona Parker retained Olympia Law Group to help her submit a loan modification package with SLS and help with the "probate" issue.

58.     On or about April 28, 2018, Olympia Law firm submitted a complete loan modification to SLS.

9

59.   PLAINTIFFS' alleges that on October 26, 2017, a Notice of Default and Election to Sell Under a Deed of Trust was recorded in the Riverside County Recorder's Office as Instrument No. 2017-0446998.

60.   This notice of default states  the arrears as of 10/26/17 were in excess of $16,601.51 **(See Exhibit "J" – Notice of Default and Election to Sell Under a Deed of Trust), however** this amount is incorrect as the $10,200 were never applied to the account. Moreover, when Mrs. Arnell Parker paid over $20,000 to bring the account current, this was an overpayment, at most she was only $3600 in arrears, in light of Bank of America's position that the loan modification that reduced Plaintiff's payment from $1,189.95 to approximately $880.00 never "went through" once Countrywide merged with Bank of America, the difference would only be $300 per payment. Since Plaintiff was making what she believed to be the modified payment for 1 year, the arrears if any, could not have been more than $3600.

61.   In light of Plaintiff Arnell Parker liquidating her 401k to pay the alleged $20,000 arrearage, Bank of America would actually owe Mrs. Arnell Parker in excess of $16, 400, which is the difference between the allegedly arrears of $20,000- $3600 which was actually owed.

62.   PLAINTIFFS' alleges that on April 2, 2018, a Notice of Trustee's Sale was recorded in the Riverside County Recorder's Office as Instrument No. 2018-0125353.  **(See Exhibit "K", Notice of Trustee's Sale) while** she was being reviewed for a loan modification.

63.   BofA DEFENDANT and MERS DEFENDANT failed to advise PLAINTIFF in writing within 30 days that their Mortgage or Deed of Trust was transferred or assigned to a third party, and that they were the new owner or assignee of the debt is illegal in violation of Title 15 U .S.C. § 1641(g).

64.   PLAINTIFFS sent SLS (now servicing the loan) Debt Validation request and Qualified Written Request ("QWR") searching for answers to the mess Bank of America had made of their loan.

65.   PLAINTIFFS' alleges that SLS DEFENDANT failed to send her a QWR response or Debt Validation.

10

66.   PLAINTIFF Shamona Parker requested a payoff from SLS because her mother's life insurance proceeds in excess of $90,000 were going to be disbursed and she'd be able to bring the account current, in the even the loan modification was not approved.

67.   PLAINTIFF Parker requested and advised SLS that the proceeds were going to be received shortly and could pay off the entire balance of the loan, not just the arrears.

68.   SLS failed to send her a pay off even though one was requested several times.

69.   SLS advised PLAINTIFF PARKER that her sale would be postponed, but in-fact the day of the sale, when she called to confirm the postponement, she or her agent law firm, was told it would proceed.

70.   PLAINTIFFS' alleges that she filed for Chapter 7 bankruptcy on May 8, 2018, to stop the sale of the home. Her bankruptcy attorney failed to submit all required documents and the case was subsequently dismissed on May 29, 2018.

71.   Despite the loan modification still being in review SLS proceeded to sell the home on 7-5-18. Plaintiffs never received a determination of the loan modification request, nor did they provide a payoff knowing the PLAINTIFF would have the funds to come current.

72.   PLAINTIFFS' alleges that on July 28, 2018, a Trustee's Deed Upon of Sale was recorded in the Riverside County Recorder's Office as Instrument No. 2018-0295048. **(See Exhibit "L", Trustee's Deed Upon Sale).**

73.   The subject property sold for $240,000; but had a fair market value of $315,000.

74.   **Thus,** PLAINTIFFS lost equity in the property, the ability to use the tax deduction on their tax returns, and incurred damage to their credit report.

75.   PLAINTIFF Shamona Parker Bogleman is now being wrongfully evicted from her home where she lived happily with her now deceased mother Arnell Parker.

///
//
//

## CAUSES OF ACTION/REMEDIES
## FIRST CAUSE OF ACTION
## WRONGFUL FORECLOSURE
*(As to all Defendants)*

76.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

77.     A claim for wrongful foreclosure requires a showing that (1) the trustee caused an "illegal, fraudulent, or willfully oppressive sale" under a deed of trust; (2) the borrower was harmed; and (3) the borrower either "tendered the amount of the secured indebtedness or was excused from tendering." Miles v. Deutsche Bank National Trust Co., 236 Cal.App, 4th 394,408 (2015) (internal quotes marks and citations omitted).

78.     The Trustee under the direction of the servicer and beneficiary caused a notice of default to be filed with the county recorders office alleging Plaintiff was in excess of $20,000 in default, in 2011, which she was not, since her payments were not being applied, and her fully executed loan modification from 2009 was somehow not honored once Countrywide merged with Bank of America. Moreover, the second notice of default from 2017 alleging Plaintiff owed $16,601.51 was also erroneous. Plaintiff was current at all times.

79.     Thus, Defendants conducted an illegal foreclosure, where the Plaintiff was current under her deed of trust, and PLAINTIFFS lost their home, and now being evicted.

80.     Tender is not required as Plaintiff is attacking the validity of the underlying debt; a tender is not required as it would constitute an affirmation of the debt. Plaintiff alleges she did not owe the amount the beneficiary stated she owed. Moreover, it would be inequitable to impose such a condition as it would defeat the underlying cause of action. (Lona v Citibank (2011)).

81.     PLAINTIFF is entitled to cancelling the Notice of Default, Notice of Trustee's Sale and Trustee's Deed of Sale, and setting aside the foreclosure sale.

### SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
*(AGAINST BoFA, SLS, QLS)*

82.     Plaintiffs re-allege and incorporate all preceding paragraphs as though set forth fully herein.

83.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

84.     The elements of a claim for breach of contract are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.

85.     The deed of trust is a contract between Defendant and Plaintiffs under a promissory note between PLAINTIFF and DEFENDANT entered into on or about November 6, 2006 and then subsequently modified on December 29th, 2008 for $169, 780.62 with a 3.99% interest rate at $708.52 principal and interest only, with maturity date of February 1, 2049[1].

86.     As discussed supra, Plaintiffs received two notices of default, one in 2011 showing a delinquency of more than $20,000, and eventually paying this amount out of fear of losing the home, even though they constantly advised Defendants they did not owe this amount, and asking about the unapplied 12 months worth of mortgage payments. The 2011 notice of default was rescinded and a 2017 NOD was recorded again alleging erroneous amounts being owed.

87.     Defendants and Plaintiffs entered into a loan modification binding each of the parties to the obligations designated in the terms therein.

---

[1] This is a point of dispute defendants take the position that the fully executed loan modification did not take effect and was not honored due to the merger between Countrywide (Freddie Mae) and Bank of America. The original mortgage payment under the 2006 note was $1,189.95 and the modified amount was $708.52, a difference of $481.43. Plaintiff was making payments in the amount of $880.46 for 12 months, which were never applied nor returned.

88.    PLAINTIFF Arnell Parker fulfilled all conditions precedent to BofA's offer for loan modification. She signed, dated, and returned one completed set and mailed in the envelope provided. **See Exhibit "B".**

89.    BofA even produced a final loan modification which provided a reduced monthly payment relief either through principal reduction, extension of loan maturity, and reduction of the loan's interest rate.

90.    Defendants failed to honor the modification agreement.

91.    At no time, was Defendants' performance under the modification excused or waived by Plaintiffs.

92.    Moreover, AFTER the 2009 modification failed to be honored, PLAINTIFF Arnell Parker was then offered a TPP on or about January 2010, she made her payment **(See Exhibit E)** and then was subsequently advised by BofA not to make any more payments. YET another breach of contract this time of the TPP.

93.    Plaintiffs allege Defendants collectively breached the loan modification and thereafter the TPP agreement contract both of which resulted in erroneous arrearage amounts being alleged on the two notices of default, the 2011 and the 2017.

94.    These actions have directly and proximately caused damage to Plaintiffs in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### *(Against Defendants BofA and SLS)*

95.    Plaintiffs re-allege and incorporate all preceding paragraphs as though set forth fully herein.

96.    Plaintiffs entered into a contract with Defendant BofA with respect to the subject loan secured by the subject property. The loan servicers are the agents for the principal BofA.

97.    There is an implied covenant existing in every contract to deal in good faith. *See McClain v Octagon Plaza, LLC, 159 Cal.App.4th 784, 799 (2008).* Plaintiffs fully executed the

permanent loan modification, thus, a contract to modify the loan agreement existed and the Plaintiffs failed to receive the benefits of the loan modification. A clear breach of good faith and fair dealing.

98.     Moreover, Defendants further breached the covenant of good faith and fair dealing by failing to apply or return the year worth of modified mortgage payments made, which lead the mortgage appearing as if it were in default, when it was not.

99.     As a result of Defendants' actions, Plaintiffs have been harmed and have suffered damages for which Plaintiffs request compensatory damages for the loss of their home and the emotional distress caused by these tortuous actions.

<u>FOURTH CAUSE OF ACTION</u>

<u>FOR FRAUD/INTENTIONAL MISREPRESENTATION</u>

*(As to BofA and SLS)*

100.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

101.     False representation (2) D knew it was false when made (3) P was ignorant of falsity and reasonable relied on representation made (4) actual and proximate cause (5) damage.

102.     BofA representatives told Plaintiffs that the mortgage payments that had been modified prior to Countrywide/BofA merger had been received and were being applied to the account, and not to worry about the mortgage statements failing to show this. That it would eventually show as being applied once everything was set up in the system. Moreover, this "issue" would have no effect on the home nor cause any foreclosure status.

103.     Plaintiffs had no reason to believe these statements were untrue, since they signed the loan modification and return it, and were told by BofA representative they knew about the loan modification and they were cashing the checks, no problem.

104.     Plaintiff's reliance on the above referenced statements caused her actual and proximate damage, as one year later Plaintiff Arnell Parker mortgage, and her joint title holder, Shamona Parker were now $20,000 in arrears, and facing foreclosure. Which in-fact, did lead to the loss of their home.

105.    Plaintiff had made all the payments, Defendant was in possession of the proof, moreover any argument that Plaintiff Arnell Parker would still have been behind 3 months payments in 2017, after mother Arnell Parker passed away, would be erroneous, since Bank of America, and later SLS failed to properly account for the payments made in 2008-2009 and actually owed or should have credited Arnell's account.

106.    Due to Defendant's fraudulent misrepresentations Plaintiffs lost her home and is being evicted.

107.    Plaintiff lost more than $150,000 in equity.

## FIFTH CAUSE OF ACTION
## PROMISSORY FRAUD
### (Against BofA and SLS)

108.    Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

109.    The elements for this cause of action consist in an existing promise of future performance with no present intent to actually perform (*Lazar v Superior Court* (1996) 12 Cal. 4th 631, 638).

110.    Defendants induced Plaintiff into believing that her account would show current, all payments would be applied, and no foreclosure would ensue.

111.    This was false, the loan modification was not honored by Defendants, the account was flagged as in default, a false notice of default was recorded in 2011, Defendant Arnell Parker did not owe arrears, she was then forced to liquidate her 401k to pay the $21,000 arrears. Then in 2017, when Arnell Parker died, and Shamona Parker missed three payments, Defendants once again filed a notice of default with false arrears, due to the erroneous accounting all the way from 2009.

112.    Even after Plaintiffs requested a QWR and debt validation, they were ignored.

113.    Plaintiffs do not recall the names of all the people they spoke with at BofA and SLS, what is clear is they all gave Plaintiffs false information.

114.   While the Plaintiffs may omit the names of who they spoke with this would fall squarely in the realm of information that lies more in the possession of defendants. (See *Boschma v Home Loan Center, Inc.* (2011) 198 Cal. App. 4th 230, 248 ["while the precise identities of the employees responsible…are not specified in the loan instrument, defendants posses the superior knowledge of who was responsible for crafting the loan documents"].) Defendants have logs of who they speak with. Thus, any omission is not fatal to Plaintiffs cause.

115.   It's not unrealistic to expect plaintiff to know "the who and what" of what was going on.

116.   As a result, PLAINTIFFS lost her home through wrongful foreclosure and is now being evicted.

## SIXTH CAUSE OF ACTION VIOLATION OF CIV.CODE § 2923.11 – FAILURE TO PROVIDE INFORMATION AFTER LOAN DENIAL AND DUAL TRACKING

### *(As to BofA, SLS)*

117.   PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

118.   After all the false representations made by Defendants, the misapplication of mortgage payments, the breach of the loan modification agreement of 2009 and the subsequent breach of the 2010 TPP, the fraudulent notices of default both in 2011 and 2017, the unjust enrichment by way of the $20,000 Arnell Parker paid to bring her allegedly delinquent account current, Defendants had the temerity of telling PLAINTIFF SHAMONA PARKER to submit a loan modification in 2016-2017 which they would not review due to the "probate issue".

119.   Then when transferred to SLS, again Plaintiff Shamona Parker submitted a complete loan modification application, which was in "active review", she was told the SALE would not take place, and would be postponed.

120.   PLAINTIFF Shamona Parker called on the morning of the sale, just to confirm, and was told, "oh no, we cannot postpone it", she rushed to retain a bankruptcy attorney to stop the sale. The case was subsequently dismissed due to the bankruptcy attorney failing to file all petitions and schedules.

121.   PLAINTIFF Shamona Parker should have never been placed in this precarious situation in the first place, as the account was not delinquent, she did not need to file a bankruptcy. Like her mother, Arnell Parker, she was forced to spend money and take measures which were unnecessary had Defendants simply acted with due care in auditing the account.

122.   PLAINTIFF alleges that BofA DEFENDANT AND SLS DEFENDANT violated the provisions Civ. Code § 2923.11. Plaintiff is entitled to relief under HBOR since the property is a single-family dwelling, is owner occupied and is encumbered by a 1st lien mortgage.

123.   PLAINTIFF was under the well-grounded belief that she was being reviewed for possible loan modification.

124.   PLAINTIFF alleges that BofA DEFENDANT AND SLS DEFENDANT failed to send PLAINTIFF any kind of determination regarding the modification. The home was simply sold at auction.

125.   Further, PLAINTIFF alleges that pursuant to Civ.Code §2923.11, a denial letter must have specific reasons including reason for investor restriction, NPV inputs, a finding that the borrower defaulted on a prior modification and a description of other foreclosure prevention alternatives.

126.   BofA DEFENDANT AND SLS DEFENDANT nonetheless continued to proceed with scheduling the sale date of June 9, 2018 per the Notice of Sale ("NOS") while PLAINTIFF was in ACTIVE review, and in Bankruptcy, constituting in a dual-tracking violation.

127.   Currently, there is no determination on PLAINTIFFS' loan modification because there was no denial letter provided to PLAINTIFF with a recording of a Notice of Sale is a material violation of the dual-tracking statute.

128.   PLAINTIFF is entitled to an injunction vacating the foreclosure, and damages according to proof and statutory penalties post-foreclosure.

## SEVENTH CAUSE OF ACTION

## NEGLIGENCE

*(As to BofA, SLS, QLS)*

129.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

130.    Recently, California courts have taken the position that a bank or lender may owe the borrower a duty not to act negligently in handling a loan modification application once it has undertaken to review the application. *Lueras v. BAC Home Loans Servicing LP* (2013) 221 Cal. App. 4th 49, 49, 63.

131.    Typically, a financial institution owes no duty of care to a borrower. Yet it may where its activities either exceed those of a conventional lender or according to a review of six non-exhaustive factors. These factors are: 1) the extent to which the transaction was intended to affect the PLAINTIFFS; 2) the foreseeability of harm to him/her; 3) the degree of certainty that the PLAINTIFFS suffered injury; 4) the closeness of the connection between the defendant's conduct and the injury suffered; 5) the moral blame attached to the defendant's conduct; and 6) the policy of preventing future harm.

132.    PLAINTIFF alleges Defendants were negligent in handling her loan, in the misapplication of mortgage payments, the breach of the loan modification agreement of 2009 and the subsequent breach of the 2010 TPP, the fraudulent notices of default both in 2011 and 2017,

133.    PLAINTIFF alleges that BofA DEFENDANT AND SLS DEFENDANT were negligent in processing the loan modification application.

134.    PLAINTIFF alleges that BofA DEFENDANT AND SLS DEFENDANT failed to provide him/her with a SPOC as proscribed in California's Homeowner's Bill of Rights ("HBOR").

135.    Here, because BofA DEFENDANT AND SLS DEFENDANT accepted to review PLAINTIFFS's loan modification application and nonetheless, continued to record a Notice of Sale. BofA DEFENDANT AND SLS DEFENDANT acted beyond a typical lender. BofA DEFENDANT AND SLS DEFENDANT owed PLAINTIFFS a duty to carefully and timely review of the loan modification application.

136.    PLAINTIFFS allege that BofA DEFENDANT AND SLS DEFENDANT breached their duty of ordinary care and good faith to PLAINTIFFS, their duty not to put PLAINTIFFS in a worse position than when they found her, when they:

a. Failed to give PLAINTIFF a fair and timely review for HAMP assistance despite the fact that PLAINTIFF performed every term required for modification in violations of Cal. Civ. Code § 2923.55.

b. Dual-tracked PLAINTIFF with the continuation of the sale date per the recording of a Notice of Sale in violation of Cal. Civ. Code § 2923.11.

137. Under *Biakanja v. Irving*, there are six (6) factors courts must analyze in determining whether a lender or servicer owes the borrower a duty of care: (1) the extent to which the transaction was intended to affect the PLAINTIFFS; (2) the foreseeability of harm to him; (3) the degree of certainty that the PLAINTIFFS suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. *Biakanja*, 49 Cal.2d at 650.

138. BofA DEFENDANT AND SLS DEFENDANT owed PLAINTIFF a duty of care as their activities *exceeded* the traditional scope of conventional money lending. BofA DEFENDANT AND SLS DEFENDANT's activities exceeded this scope when they undertook to review PLAINTIFF for modification assistance. In doing this, BofA DEFENDANT AND SLS DEFENDANT ceased acting wholly as money lenders and began acting instead as *agents* for the Departments of Treasury, and Housing and Urban Development, officiating their Making Home Affordable Program, through which loan modification is awarded. Defendant's activities further exceeded this scope, as money lenders are traditionally in the business of collecting, not modifying loans.

139. BofA DEFENDANT AND SLS DEFENDANT also owed PLAINTIFF a duty of care according to the six factors listed above.

140. **First**, the transaction was intended to affect PLAINTIFF. The transaction at issue involved PLAINTIFFS's loan modification application. Potential loan modification determines whether PLAINTIFF keeps her home. Potential loan modification is what enticed PLAINTIFF to divulge sensitive information and cling only to BofA DEFENDANT AND SLS DEFENDANT for mortgage assistance. Denying PLAINTIFF a loan modification on a technicality after reaping the benefits from the application allows Defendant to foreclose with impunity.

141.   **Second**, the harm to PLAINTIFF was foreseeable: the disclosure of sensitive information required for loan modification; a forestallment of PLAINTIFF from looking sideways for other assistance with her loan; and ultimately, default and imminent foreclosure as PLAINTIFF was given no definite excuse against loan modification approval, that she might contest it or appeal her cause.

142.   **Third,** not only was PLAINTIFF's harm foreseeable, but certain according to the same reasons it was foreseeable as PLAINTIFF was relegated to a subprime loan by BofA DEFENDANT AND SLS DEFENDANT. A PLAINTIFF was left in a difficult financially oppressive loan.

143.   **Fourth,** Defendants' conduct and PLAINTIFF's injuries were intimately connected. PLAINTIFF alleges Defendant put him up to applying for a loan modification, holding it out to him as available after the Notice of Sale was recorded, when it was not. PLAINTIFF alleges BofA DEFENDANT AND SLS DEFENDANT forced PLAINTIFF into delinquency by denying her a loan modification wrongly and without explanation.

144.   **Fifth,** BofA DEFENDANT AND SLS DEFENDANT's misconduct is morally blameworthy. When PLAINTIFF stood in a time of need, BofA DEFENDANT AND SLS DEFENDANT extorted from PLAINTIFFS deep personal and financial information, bleeding her all the more of her resources as she supplied it and then charging her account exorbitant late fees as they reviewed it. BofA DEFENDANT AND SLS DEFENDANT used this information to discover how swiftly they could foreclosure on the subject property and whether any hiccup therein might occur.

145.   **Sixth,** holding BofA DEFENDANT AND SLS DEFENDANT to a duty here presents a good policy of preventing future harm. Lenders should state initial eligibility requirements for loan modification upfront to borrowers; they should not be able to use such program to pry sensitive information from them. Lenders should also explain their loan modification denials exactly, in detail, that borrowers know they were properly considered and whether appeal is available from them.

146.   Thus, BofA DEFENDANT AND SLS DEFENDANT owed PLAINTIFFS a duty of care.

147.   BofA DEFENDANT AND SLS DEFENDANT's breaches are the *actual* and *proximate cause* of PLAINTIFF's damages because, but for their breaches, PLAINTIFF's loan would have been

modified, arrearages would not have been capitalized, the loan would have become current, and the monthly payments would have been decreased avoiding late penalties. If BofA DEFENDANT AND SLS DEFENDANT acted reasonably and even if they denied PLAINTIFF's RMA within the statutory and or reasonable period, PLAINTIFF would have avoided a large arrears and large interest which could now possibly cause foreclosure of the property.

148.    As a consequence of the BofA DEFENDANT AND SLS DEFENDANT's practice in this regard, PLAINTIFF suffered damages by (1) spending numerous hours and resources in providing BofA DEFENDANT AND SLS DEFENDANT with updated financial documents (2) loss of income due to borrowers' loss of hours at work in order to facilitate Defendants' repetitive request for unnecessary documents, (3) incurred additional and unnecessary late penalties on top of the default servicing which included the recording of the Notice of Sale; (4) damaged her credit reports in the process; and (5) higher arrears that is no longer affordable to PLAINTIFFS.

149.    PLAINTIFFS demand restitution damages in an amount to be determined at trial and to disgorge profits from BofA DEFENDANT AND SLS DEFENDANT. PLAINTIFFS incurred copying and faxing costs and attorney fees in the loan modification application process.

## EIGHTH CAUSE OF ACTION
### VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA) CAL. CIV. CODE §§ 1788 – 1788.32
*(As to SLS, BofA, QLS)*

150.    Plaintiffs re-allege and incorporate all preceding paragraphs as though set forth fully herein.

151.    The foregoing acts and/or omissions committed by Defendants constitute multiple violations of the RFDCPA.

152.    Defendant's continuous and consistent attempts in the form of numerous phone calls and ominous correspondence with the direct intent to collect on a debt Arneli Parker did not owe.

22

153.    Defendant BofA and SLS have collected more than the amount actually owed and nonetheless proceeded with selling Plaintiffs' home.

154.    As a result of each and every one of DEFENDANTS' violations of the RFDCPA, Plaintiffs are entitled to any and all actual damages pursuant to Cal. Civ. Code § 1788.30(a), statutory damages for the willful violations in the amount of up to $1,000.00 pursuant to Cal. Civ. Code § 1799.30(b), and reasonable attorney fees and costs of litigation pursuant to Cal. Civ. Code § 1788.30(c) from NATIONSTAR.

155.    DEFENDNTS knowingly and intentionally engaged in harassing, oppressive, and abusive conduct toward PLAINTIFF Arnell Parker when calling, sending letters, and threatening foreclosure for a debt she did not owe. Your client is liable to my client for statutory and actual damages thereon, attorneys' fees, and costs. Said violations include, but are not limited to violations of 15 U.S.C. §1692e, et seq. and 15 U.S.C. §1692d, et seq.

156.    DEFENDANTS reported misleading information to the credit bureaus and to the foreclosing trustee.

157.    DEFENDANTS made knowing and intentional misrepresentations or misleading and/or false representations as to the legal status, character, and/or amount of the debt in violation of 15 U.S.C. §1692e (2), and in violation of U.S.C.15 §1692e(10). Your client has attempted to collect for fees, interest, and expenses they Plaintiff is not liable for due to the reckless accounting by defendants.

## NINETH CAUSE OF ACTION
## CAUSE OF ACTION RESPA VIOLATIONS
### (As to BofA, SLS, QLS)

158.    While RESPA contains many protections for consumers, the section that may be most useful for borrowers facing foreclosure is Section 6, which pertains to a qualified written request. A qualified written request, is a written letter sent to the mortgage servicer that:

    a.   Requests information pertaining to the mortgage loan, or

    b.   Requests that the services correct an error such as misapplied payments.

159.   DEFENDANT SLS failed to provide a QWR response validating the alleged arrearage that was provided to the foreclosing Trustee eventually leading to the sale of the home.

160.   PLAINTIFFS demand compensatory damages for lost equity and emotional distress.

## TENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(As to all Defendants)*

161.   Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

162.   Elements reckless disregard causing severe emotional distress.

163.   Defendants knew PLAINTIFF had a pending sale date, knew they were in possession of the allegedly missed mortgage payments from which Defendant directed the Trustee to send out a Notice of Default and Election to sell, and still they did nothing to correct Plaintiff's account.

164.   Defendant's reckless disregard in correcting Plaintiff's account and applying her payments caused Plaintiff severe emotional distress.

165.   Plaintiff has lost her home, cannot sleep, has anxiety is being treated for depression and is being evicted.

## ELEVENTH CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF. CODE §17200
*(As to BofA and SLS)*

166.   PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

167.   BofA DEFENDANT AND SLS DEFENDANT are engaged in the business of lending money for real property purchases and selling mortgages/deed of trust as secured loans, and or servicing those loans.

168.   QUALITY DEFENDANT is engaged in the business of BEING A TRUSTEE FOR Deeds of Trust and home loans.

24

169.    PLAINTIFFS allege that ALL DEFENDANTS violated Bus. & Prof. Code §§ 17200, *et seq.*, by engaging in unlawful, unfair, and fraudulent business practices as alleged above.

170.    BofA DEFENDANT AND SLS DEFENDANT violated the Homeowners' Bill of Rights and Defendants failed to timely and fairly evaluate PLAINTIFFS' application for loan modification.

171.    PLAINTIFFS allege that BofA DEFENDANT AND SLS DEFENDANT negligently made false representations. BofA DEFENDANT AND SLS DEFENDANT's negligent conduct is likely to deceive members of the public generally because BofA DEFENDANT AND SLS DEFENDANT offered loan modifications, but not actual assistance with such actions as described herein.

172.    PLAINTIFFS allege that BofA DEFENDANT AND SLS DEFENDANT  violated the "unfair," "unlawful," and "fraudulent" prongs of the UCL resulting in injury and economic loss to PLAINTIFF when BofA DEFENDANT AND SLS DEFENDANT:

1.

    a.  Failing to honor 2009 loan modification, yet still accepting payments, and failing to apply the payments or return them to the borrower.

    b.  By providing false information to the Foreclosing Trustee and allowing the 2011 notice of default and the 2017 notice of default be premised on false numbers, as the Plaintiff did not owe arrears.

    c.  By recording a false notice of sale and proceeding with a sale of the home.

    d.  By causing the Plaintiff to be evicted from her home.

    e.  By Implementing a severely flawed loss mitigation review process in which borrowers, like PLAINTIFF, are persuaded to rely on BofA DEFENDANT AND SLS DEFENDANT's loan modification review process;

    f.  The process is purposefully lengthy so that loss mitigation and loan modification will not be timely provided. BofA DEFENDANT AND SLS DEFENDANT

purposefully causes a lengthy delay in order to cause PLAINTIFF and borrowers like PLAINTIFF to incur continuing interest charges that would otherwise be mitigated, late fees, and ultimately foreclosure costs that would erode a borrower's equity or severely diminish any possibility for future equity.

g.  Defendants purposefully impeded timely loss mitigation denial or approval while expressing that PLAINTIFF is in review prevents PLAINTIFF from seeking other external loss mitigation options including abandoning the property and/or short sale.

h.  Ignored PLAINTIFF's communications and failed to communicate with PLAINTIFF regarding the financial distress regarding mortgage loan repayment;

i.  Purposely violated California Civ. Code §§ 2924.11.

j.  BofA DEFENDANT AND SLS DEFENDANT's business practices of failing to advise homeowners in writing within 30 days that their Mortgage or Deed of Trust was transferred or assigned to a third party, and that BofA DEFENDANT AND SLS DEFENDANT are the new owner or assignee of the debt is illegal in violation of Title 15 U .S.C. § 1641(g).

173.  These acts and more are unlawful and unfair conducts have caused substantial harm to PLAINTIFF and the California citizenry at large.

174.  A borrower may bring an unfair claim per the statute by alleging that a servicer's statements or conduct was misleading.

175.  In the present case, the information provided to PLAINTIFFS was certainly misleading and not consistent as to the status of the loan modification and what she was supposed to do to satisfy the lender's demands.

26

176.    As a consequence of the BofA DEFENDANT AND SLS DEFENDANT's practice in this regard, PLAINTIFFS suffered damages by (1) spending numerous hours and resources in providing BofA DEFENDANT AND SLS DEFENDANT with updated financial documents that was pointless (2) loss of income due to borrowers' loss of hours at work in order to facilitate BofA DEFENDANT AND SLS DEFENDANT's repetitive request for unnecessary documents, (3) incurred additional and unnecessary late penalties on top of the default servicing which included the recording of the Notice of Sale, (4) damaged her credit reports in the process; and (5) higher arrears that is no longer affordable to PLAINTIFF.

177.    Under the three-factor analysis test found in *Zuniga v. Bank of America, N.A.*, 2014 WL 7156403 (C.D. Cal. Dec. 9, 2014), PLAINTIFF has stated a viable unfair prong UCL claim.

178.    PLAINTIFF demands injunctive relief vacating the wrongful foreclosure and restitution damages and that Defendants disgorge their illicit profits so that PLAINTIFFS receive all monetary awards statutorily due to her.

179.    California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal.Bus.& Prof. Code 17200. A violation of virtually any local, state, or federal law can function as the predicate for a UCL claim. *Saunders v Sup. Ct., 27 Cal. App.4th 832, 838-39 (1994).*

180.    Plaintiffs have suffered injury in-fact by your client's violation of Fair Debt and Collection Practices; collecting on debt that was not owed; making unlawful calls to Plaintiffs with threats of foreclosure debt that was in-fact misapplied threatening the client with foreclosure and then actually selling the home, when they knew a proper accounting had not been done.

181.    As a result of Defendants' actions, Plaintiffs have been harmed and have suffered damages for which Plaintiffs request compensatory damages for the loss of their home and the emotional distress caused by these tortuous actions.

## TWELFTH CAUSE OF ACTION
## CANCELLATION OF WRITTEN INSTRUMENTS, CIV. CODE § 3412
*(As to All Defendants)*

27

182. PLAINTIFFS re-allege and incorporate by reference all proceeding paragraphs as though fully set forth herein.

183. PLAINTIFFS have a reasonable belief that the Assignment to the Deed of Trust, Instrument no. 2011-0154502 is a fraudulent forgery or otherwise void instruments that are void ab initio. MERS DEFENDANT has no employees, and their purported agent did not sign the Assignment, and the notary committed forgery as well.

184. PLAINTIFFS have a reasonable apprehension that if these fraudulent, forged and criminally recorded written instruments are left outstanding, they may cause serious injury due to those documents being void or voidable.

185. PLAINTIFFS seek to cancel the hereinabove written instruments pursuant to Civ.Code §3412 due to their being fraudulently forged, recorded instruments that are void ab initio, and are a cloud on title.

186. Moreover, the foreclosure was premised on false accounting, thereby the notice of default and the notice of sale are void and the sale should be reversed.

187. The Trustee's Deed Upon Sale should be rescinded.

## THIRTEENTH CAUSE OF ACTION
## FOR NEGLIGENT MISREPRESENTATION

*(As to all Defendants)*

188. PLAINTIFFS re-allege and incorporate by reference all proceeding paragraphs as though fully set forth herein.

189. DEFENDANTS made false representations about the amounts owed, told PLAINTIFFS they would lose their home if they did pay amounts which were actually not owed.

190. DEFENDANTS were fraudulent or at minimum careless in ascertaining the truth of amounts owed, and in telling PLAINTIFFS not to worry that the account would be brought current and the no foreclosure would be initiated both at the 2011 NOD and the 2017 NOD.

191. Moreover, the foreclosure was premised on false accounting, thereby the notice of default and the notice of sale are void and the sale should be reversed.

192.   The Trustee's Deed Upon Sale should be rescinded.

193.   As a result of the misleading and false information Plaintiffs lost their home, suffering damages in an amount to be determined at trial.

## FOURTEENTH CAUSE OF ACTION
## WRONGFUL EVICTION
*(Against All Defendants)*

194.   Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

195.   On or about July 24, 2018, Plaintiff received a Notice to Quit, posted on her door, indicating that she had to vacate the subject property within 3 DAYS. It was only after this occurred that Plaintiff became aware of the foreclosure. See **(Exhibit "M" – Notice of UD Trial)**.

196.   On or about through their attorney of record left an Unlawful Detainer Summons and Complaint on Plaintiff's doorstep.

197.   PLAINTIFF's demands compensatory damages and rescission of the deed upon sale.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for judgment in her favor and against DEFENDANT(S) and each of them as follows:

1.   For compensatory, special and general damages in an amount subject to proof at trial;

2.   For civil penalties pursuant to Civ.Code § 2924.12 (b) for the greater of treble damages or $50,000.

3.   For punitive damages for Defendants Torts;

4.   For restitution and the disgorgement of profits;

5.   For an injunction cancelling the void or voidable written instruments;

6.   For an order awarding PLAINTIFFS reasonable attorney's fees pursuant to Civ.Code § 2924.12 (i);

7.   For reasonable costs of suit pursuant to Code Civ.Proc. § 1032;

8.   For recompense of damages and arrears; and

9.   For any other relief as it may deem just and proper.

DATED: December 18, 2018                     CDLG, PC


                                     BY:    _____
                                            Tony Cara, Esq.,
                                            Attorney for Plaintiff  Shamona Parker
                                            Bogleman and the Estate of Arnell Parker

EXHIBIT "A"

Branch :I05   User :KALL

Lender Banker-PLD
Fidelity National Financial

DOC # 2006-0816791
11/09/2006 08:00A Fee:84.00
Page 1 of 13
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Recording Requested By And
After Recording Mail To:
GREENLIGHT FINANCIAL SERVICES

Until Driver's Document Serial File
IRVINE, CA 92618

Prepared By:
GREENLIGHT FINANCIAL SERVICES

8105 IRVINE CENTER DRIVE #100
IRVINE, CA 92618   8A52393

264-292-014-4

[Space Above This Line]

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
|   |   |   | 13   | 13   |     |      |      |     |      |
| M | A | L | 465  | 426  | PCOR | NCOR | SMF | NCHG | EXAM |
|   |   |   |      |      |      |      |     |     | 03 1 |

DEED OF TRUST            MIN: 1001460-0130182261-9   84

T 021

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)   "Security Instrument" means this document, which is dated   OCTOBER   28, 2006   , together with all Riders to this document.

(B)   "Borrower" is
ARNELL PARKER, AN UNMARRIED WOMAN AND SHANONA BOKELMAN, AN UNMARRIED WOMAN

Borrower is the trustor under this Security Instrument.

(C)   "Lender" is
GREENLIGHT FINANCIAL SERVICES

Lender is a   S-CORPORATION                                    organized and existing under the
laws of   CALIFORNIA                        . Lender's address is
8105 IRVINE CENTER DRIVE #100, IRVINE, CA 92618

(D)   "Trustee" is   LSI A DIVISION OF CHICAGO TITLE INSURANCE CO.
2550 N. REDHILL, SANTA ANA, CA 92705

(E)   "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Initials: ___

Loan Number   0130182261-9          Form 3005 1/01
CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   (32005) (rev. 4/07)
Page 1 of 12

Branch :IQ5   User :KALL

(F)   "Note" means the promissory note signed by Borrower and dated   OCTOBER  26, 2006  . The Note states that Borrower owes Lender   ONE HUNDRED SIXTY-NINE THOUSAND AND 00/00
Dollars (U.S. $    169,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   NOVEMBER 01, 2036  .
(G)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider             ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ Other(s) [specify]        ☐ Biweekly Payment Rider

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M)   "Escrow Items" means those items that are described in Section 3.
(N)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q)   "RESPA" means  the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R)   "Successor in Interest of Borrower"  means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.

Initials: ___

Loan Number : 0132063111-00
CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 1/01
Page 2 of 12                                                                  ©2004 [ver. 4/06]

Branch :I05   User :KALL

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of   RIVERSIDE

SEE ATTACHED EXHIBIT A

Assessor's Identification Number:   284-192-011-4
which currently has the address of   33757 SWAN STREET                      MORENO VALLEY
                                     [Street]                                [City]

California   92555
            [Zip Code]          ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the

Initials: _____

Loan Number: 8131192781-56
CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005 1/01
                                                                                      EX3005 (rev. 1/07)
Page 3 of 11

Branch :I05    User :KALL

Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds

Loan Number   0130202781-68
CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                  Form 3005 1/01
Page 5 of 12                                                                                         C30041 (rev. 6/07)

Branch :105    User :KALL

held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (i) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may

Initials: _____

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 5 of 13

Form 3005 1/01
C3005 (rev. 0/05)

Branch :I05   User :KALL

disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing as Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to,

Loan Number  9130202781-00
CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 7 of 11

Form 3005 1/01
GD034 (rev. 4/05)

Branch :105   User :KALL

occupy the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

Loan Number: 6120102241-40
CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 7 of 13

Form 3005 1/01
C.3005J (rev. 4/03)

Branch :105   User :KALL

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the

Initials: _____

LoanNumber: 03303093241-00
CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3005 1/01
Page 8 of 11                                                                                           ©2004 (rev. 4/05)

Branch :IG5 User :KALL

co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate

Loan Number: 2133292101-88
CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 9 of 11
Form 3005 1/01
C3005 (pre-6/13)

Branch :I05   User :KALL

payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or

Branch :I05   User :KALL

tion to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in

Loan Number: 0328320181-30   Initials:   <br>CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01   <br>Page 13 of 12   CMAS (Ver. 4/07)

Branch :IOS  User :KALL

which the Property is located. The Instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)      _____ (Seal)
ARNELL PARKER          -Borrower   SHAMONA BOKELMAN       -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                          -Borrower

INDIVIDUAL ACKNOWLEDGMENT

STATE OF CALIFORNIA
COUNTY OF _____

On _____ before me, _____
_____ (name and title of officer) personally appeared
ARNELL PARKER, SHAMONA BOKELMAN

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

(Seal)   LINDA RAE CHERMAN
         COMM. # 1641549
         NOTARY PUBLIC-CALIFORNIA
         SAN BERNARDINO COUNTY
         My Commission Expires
         JULY 21, 2010

(Signature of person taking acknowledgment)

Printed Name: _____

(Title or rank) _____

(Serial number, if any) _____

Loan Number: 6134202731-25
CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                  Form 3005 1/01
                                                         Page 13 of 14                   DOCMAGIC (800, 629)

Branch :I05  User :KALL

Order No. 52923393 - 2923393-54

## EXHIBIT "ONE"

Lot 5 of Tract 19032-8 as shown by Map on file in Book 184 Page 43 to 46 of Maps in the office of the County Recorder of Riverside County, California.

Assessor's Parcel No: 264-292-014-4

2                                        (Rev. 11/17/04)

# EXHIBIT "B"



# Countrywide
## HOME LOANS

ARNELL PARKER
23757 Swan St
Moreno Valley, CA 92557

Loan #: 146413229
Property Address: 23757 SWAN STREET
MORENO VALLEY, CA 92557

December 29, 2008

Dear ARNELL PARKER,

We know you want to pay your mortgage, but right now you may be struggling to make your monthly payment.

We want to work with you to get your loan current again. By signing and returning the enclosed loan modification forms, we may be able to lower your monthly payment from $1,189.95 to approximately $880.96 by doing the following:

- Reducing your current interest rate to 3.99% for the remaining term of the loan.

- Extending the term for repayment period to 40 years. Your new maturity date will be February 1, 2049.

- Bringing your loan to a current status.

*This will increase the outstanding balance of your loan because we will add any unpaid indebtedness and collection expenses to your new loan amount. Any unpaid amounts that accrue after the date of this letter and the time the documents are returned will also be added to the principal loan balance.*

Simply sign, date and return one (1) complete set of the enclosed documents to us in the re-usable Federal Express envelope. Please use the return label provided and mail no later than January 27, 2009 to the following address:

# Countrywide
## HOME LOANS
Countrywide Modification, 100 Beecham Drive, Pittsburgh, PA 15205

If you have questions, loan consultants are standing by from 8:00 AM until 9:00 PM CT Monday through Friday, and 8:00 AM until 3:00 PM CT on Saturday except holidays at 1-877-6-HEART-8 (1-877-643-2788).

Countrywide and Freddie Mac are committed to helping our borrowers stay in their homes. We've already helped hundreds of other customers just like you. Sign and return the enclosed documents today to get your loan back on track.

Sincerely,

The Hope Team
Countrywide is required by law to inform you that this communication is from a debt collector.

December 29, 2008
The HOPE Team
CHL Loan #: 146413229

Page 1 of 4

WDGRMNR 8124 03/28/2008

EXHIBIT "C"

RECORDING REQUESTED BY:
Countrywide Home Loans Servicing LP
Attn. WORKOUT DEPARTMENT, LAN-70
177 COUNTRYWIDE WAY
LANCASTER, CA 93536¹

Loan #: 146413229

## LOAN MODIFICATION AGREEMENT

### (Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 29th day of December, 2008, between ARNELL PARKER, and Countrywide Home Loans Servicing LP (Lender), amends and supplements (1) the Mortgage, Deed of Trust or Deed to Secure Debt (the Security Instrument), dated the 26th day of October, 2005 and in the amount of $169,000.00 and (2) the Note secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as in the "Property", located at 23757 SWAN STREET, MORENO VALLEY, CA 92557.

The real property described being set forth as follows:

SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (not withstanding anything to the contrary contained in the Note or Security Instrument):

1. As of the 1st day of February, 2009, the amount payable under the Note or Security Instrument (the "Unpaid Principal Balance") is U.S. $169,780.63 consisting of the amount(s) loaned to the borrower by Lender and any interest capitalized to date.

2. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.99% from the 1st day of February, 2009. The Borrower promises to make monthly payment of principal and interest of U.S. $708.52 beginning on the 1st day of March, 2009, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on the February 1, 2049 ( the "Maturity Date" ), the Borrower still owes amounts under the Note and Security Instrument, as amended by this agreement, the Borrower will pay these amounts in full on the Maturity Date.

3. The Borrower will make such payment at 450 American Street, Simi Valley, California 93065 or at such other place as the Lender may require.

4. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior consent, the Lender may, at it's option, require immediate payment in full of all sums secured by the Security Instrument.

5. The Borrower also will comply with all other covenants, agreements, and requirement of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, if your original Note or Security Instrument was an Adjustable Rate, the following terms and provision are cancelled, null, and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the original Note and Security Instrument (if any) proving for, implementing, or relating to, any adjustment, in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the original Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.



December 29, 2008
The HOPE Team
CHL Loan #: 146413229

Page 2 of 4

WDGA7JU4R 3124 03/28/2008

# EXHIBIT "D"

| 1 of 4 | **Bank of America**  Home Loans | Customer Service PO Box 5170 Simi Valley, CA 93062-5170 | Statement date 03/30/2010 **Account Number** 146413229 Property address 23757 Swan Street |
|---|---|---|---|

**0068720** 01AT0357 **AUT0** 730 01331 92557-3200
MBR ENA0 G101-----0-2-- C0000068 WC 1 P63769
**ARNELL PARKER**
23757 Swan St
Moreno Valley CA 92557-7900





## IMPORTANT NOTICE

If you and BAC Home Loans Servicing, LP have entered into an agreement to address your monthly payments, please make payments in accordance with this agreement.

If you have qualified for an interest rate reduction based upon current active military service, subsequent statements may not reflect the reduced payment amount. Please refer to the notice previously sent to you for the reduced payment amount.

| HOME LOAN SUMMARY | Home loan overview as of 03/30/2010 | | Amount due on 04/01/2010 as of 03/30/2010 | |
|---|---|---|---|---|
| | Principal balance | $163,559.59 | Home loan payment due 04/01/2010 | $1,235.77 |
| | Escrow balance | -$2,177.18 | Past due payment amount | 13,076.60 |
| | Late Charge if payment received after 04/16/2010 | $50.61 | Partial payment balance | 5,118.30 |
| | Date | Payments received | (see next page for account details) | |
| | 03/24/2010 | | | |

Calls may be monitored or recorded to ensure quality service. We may charge you a fee (of up to $14.00). BAC Home Loans Servicing, LP is required by law to inform you that this (or any payment received or rejected by your financial institution, subject to applicable law; communication is from a debt collector.

**PAYMENT INSTRUCTIONS**
1. Please
  • don't send cash
  • don't staple your check to the payment coupon
  • don't include correspondence
  • include coupon with payment
2. Write the account number on the check or money order.
3. Write in any additional amounts you are including.
4. Make your check payable to BAC Home Loans Servicing, LP
  Attn: Remittance Processing
  PO Box 615503
  Los Angeles, CA 90051-6803

| Account number | 146413229 | (7) |
|---|---|---|
| Arnell Parker | | |
| 23757 Swan Street | | |
| Moreno Valley, CA 92557 | | |

SEE OTHER SIDE FOR IMPORTANT INFORMATION

BAC Home Loans Servicing, LP
PO BOX 615503
LOS ANGELES, CA 90051-6803

| Payment due Apr 1, 2010 | $1,235.77 |
|---|---|
| After Apr 16, 2010 late payment | $1,286.38 |
| Please enclose e-mail information on the reverse side of this coupon. | |
| Additional Principal | |
| Additional Escrow | |
| Check total | |

14641322970000012357700012B638

:586990058: 1161 13229:

2 of 4

| HOME LOAN DETAILS | Monthly payment breakdown as of 03/30/2010 | | Loan type and term | |
|---|---|---|---|---|
| | Principal and/or interest payment | $1,012.15 | Loan type | 30 Yr Conventional |
| | Escrow payment amount | 223.62 | Contractual remaining term | 27 Years, 6 Months |
| | Fees due | 210.00 | Interest rate | 5.990% |
| | Total monthly home loan payment | $1,235.77 | | |

**Escrow account expenses**
*We are responsible for the payment of the following escrow items with the exception of the items marked with an asterisk (*).*
~~The payment of the items marked with an asterisk (*) is the responsibility of the homeowner.~~

| Description | Payee | Policy number/Tax ID | Frequency | Next due date | Amount due |
|---|---|---|---|---|---|
| Homeowners Insurance | Lender Placed Insurance | OM3668474 | Annual | 06/30/2010 | 762.00 |
| County taxes | Riverside County Tax Collector | 2842920144 | Annual | 11/30/2010 | 906.20 |
| County taxes | Riverside County Tax Collector | 2842920144 | Annual | 03/31/2011 | 906.20 |

**Home loan activity since your last statement**

| Date | Description | Principal | Interest | Escrow | Late charge | Other Unapplied | Total |
|---|---|---|---|---|---|---|---|
| | | | | | | 887.06 | 887.06 |
| 03/23/2010 | Misc posting | | | | | -1,338.47 | -1,338.47 |
| 03/24/2010 | Misc posting | | | | | | 1,338.47 |
| 03/24/2010 | May payment | $194.74 | 817.41 | 326.32 | | | 1,338.47 |
| 03/25/2010 | Late charge adj | | | | 50.61 | | 50.61 |
| 03/26/2010 | County tax pmt | | | -906.20 | | | -906.20 |
| | **Ending balance** | $163,859.59 | | -$2,177.18 | | | |

**NOTE: The ending balance is probably not the same as the amount to payoff your loan. For payoff information, you may use our 24-hour automated information system at 1.800.889.5923.

**CREDIT REPORTING NOTICE**

**TO CONTACT US.**
We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

For up-to-the-minute information about the account, use our 24-hour automated information system. To ask us about this statement or account information, call 1.868.853.8193, Mon - Fri, 8am to 9pm Eastern Time. Calls may be monitored and/or recorded for service quality purposes. Se habla español. 1.800.295.0025.
TDD 1.800.300.6407
Please have the account number available when you call.

Or write to us at:
The address for general inquiries and all RESPA Qualified Written Requests is: BAC Home Loans Servicing, LP, Attn:
Customer Service  CA6-919-01-41, PO Box 5170, Simi Valley, CA 93062-5170

Tax Dept CA6-913-10-01, PO Box 10211, Van Nuys, CA 91410-0211
Insurance Dept, TX2-977-01-03, PO Box 961206, Fort Worth, TX 76161-0206
Payments, Attn: Remittance Processing PO Box 515903, Los Angeles, CA 90051-5903
Overnight deliveries LADC Retail Payment Services, CA9-705-09-31, 1000 W Temple Street, Los Angeles, CA 90012-1514
Our website www.bankofamerica.com
Your account information is available in Spanish on the site mentioned above.

Bank of America, N.A. Member FDIC. Bank of America, N.A. and BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A., are Equal Housing Lenders. ©2010 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.

**Account Number 146413229**
E-mail use: Providing your e-mail address(es) below will allow us to send you information on your account
Amoli Parker
E-mail address

E-mail address

Received your payment. All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payment, rather than principal reduction.

Postdated checks will be processed on the date received unless a future calendar date is honor the date written on the check as a condition of a repayment plan. Payments by phone received by 6:00 PM Pacific Time on a business day will be effective the same day. Payments by phone received after 6:00 PM Pacific Time or on a conduct business day will be applied to your account no later than the next business day.

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 1/12th of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year.

0088720012922

**Bank of America**

Home Loans

3 of 4

Account Number 146413229

Property address
23157 Swan Street

Statement date
03/30/2010

### Important message about your Home Affordable Modification Trial Period Plan

You are currently participating in a Home Affordable Modification Trial Period Plan. During this Trial Period, you may make your monthly payments at the Trial Period monthly payment amount, which is $862.01 instead of the amount shown on this statement

You will continue to receive monthly statements during your Trial Period Plan that will show the payment amount based on your original home loan agreement as your original loan remains in effect and unchanged during the trial period. You will be notified once we have determined your eligibility for a permanent loan modification.

4 of 4

# EXHIBIT "E"

**Arnell Parker**
23757 Swan
Moreno Valley Ca 92557
909-601-1019

4027

90-8198/3222

_Feb 11, 2010_
Date

Pay to the
Order of _B of A_                                    $ _887.00_

_Eight Hundred Eighty Seven_ 80/100 Dollars

EPW

ORANGE COUNTY'S
CREDIT UNION
2300 E. Orangewood Ave. #105
Anaheim, CA 92806   714-755-5900

For _#146413229 House pmts_         _Arnell Parker_

⑆322281989⑆ ⑉001010075 87⑈   4027

Account:101007587  Draft#:4027  Amount:$887.00  Sequence:5021710  Date:02/24/2010  CUID:322281989  Branch:0  WorkType:NSDS

595707 600564 05 04     Credited Within
146413229 022210     Named Payee
38 39376  021 FAX 0 DE 90 070 048; NBK8FS7
            #1233176818 PM
146413229  HCD=4    021700081908001

# EXHIBIT "F"

Branch :105   User :KALL

Recording Requested By
ServiceLink

Recording requested by:

DOC # 2011-0154502
04/07/2011 12:00P Fee:24.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Larry U. Ward
Assessor, County Clerk & Recorder

When recorded mail to:

Bank of America
475 Crosspoint Parkway
Getzville, NY 14068

APN: 254-292-014-4
TS #: CA-11-432971-VF
Order #: 770025
MERS Phone No. 1-888-679-6377
MERS MIN No.: 0

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|----|----|------|-----|------|
| M | A | L | 465 | 426 | POOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | T: | CTY | UNI | |

081

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

**BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME   LOANS SERVICING LP**

All beneficial interest and all rights accrued or to accrue under that certain Deed of Trust dated 10/26/2006 executed by ARNELL PARKER AN UNMARRIED WOMAN AND SHAMONA BOKELMAN AN UNMARRIED WOMAN, as Trustor(s) to LSI A DIVISION OF CHICAGO TITLE INSURANCE CO, as Trustee and recorded as Instrument No. 2006-0815791, on 11/6/2006 of Official Records, in the office of the County Recorder of RIVERSIDE County, CA, that secures the underlying promissory note,

Branch :I05   User :KALL

J. W.

TS #: CA-11-432971-VF

Page 2

Dated: 3/25/2011

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS INC., AS NOMINEE FOR GREENLIGHT
FINANCIAL SERVICES, its Successors and
Assigns

By _____
    Aldie Ovenas
    Assistant Secretary

State of: _____

County of: _____          } ss.

On _____ date before me, _____ a notary public, personally appeared
_____, who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.         (Seal)        See attached
                                                         certificate.
                                                         3/25/11  ZXW

Branch :I05   User :KALL

## ACKNOWLEDGMENT

State of California
County of _____ Ventura _____ }

On March 25, 2014 ____ before me, Eric T. Way, Notary Public _____
                                    (Insert name and title of the officer)

personally appeared ___ Aida Duenas ------------------------------------------------------
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within Instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the Instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

                                        ERIC T. WAY
                                        Commission # 1835518
                                        Notary Public - California
                                        Los Angeles County
                                        My Comm. Expires Feb 7, 2018

Signature _____   (Seal)

Attached to: Assignment of Deed of Trust, Arnell Lackey.
                                                    3/25/14 ETW

# EXHIBIT "G"

Branch :I05   User :KALL

Recording Requested By  
ServiceLink

Recording requested by:

When recorded mail to:

DOC # 2011-0156341
04/08/2011 11:15A Fee:21.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

TS #: CA-11-432871-VF
Order #: 770825
MERS MIN No.: 0

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | T: | | CTY | UNI |

## Substitution of Trustee

WHEREAS, ARNELL PARKER AN UNMARRIED WOMAN AND SHAMONA BOKELMAN AN UNMARRIED WOMAN was the original Trustor, LSI A DIVISION OF CHICAGO TITLE INSURANCE CO was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR GREENLIGHT FINANCIAL SERVICES was the original Beneficiary under that certain Deed of Trust dated 10/28/2008, and recorded on 11/6/2008 as Instrument No. 2008-0815791, in book XXX, page XXX, of Official Records of RIVERSIDE County, CA; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes QUALITY LOAN SERVICE CORPORATION, , as Trustee under said Deed of Trust.

Page 1

Branch :I05   User :KALL

Substitution of Trustee - CA
TS #: CA-11-432871-VF
Page 2

Date:

APR 0 5 2011

BAC HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME   LOANS SERVICING LP
by Quality Loan Service Corporation as its attorney
in fact

By:  Tim Bargenquast, Assistant Vice President

State of: California)
                    ) ss.
County of: San Diego)

On  APR 0 5 2011  before me, B. Perez a notary public, personally appeared Tim Bargenquast, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.          (Seal)

B. Perez

B. PEREZ
Commission No. 1903063
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
My Comm. Expires September 15, 2014

Branch :l05   User :KALL

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.

[AND WHEN RECORDED MAIL TO]
Bank of America
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Doc ID: 48714641322919315

DOC # 2017-0119694
03/24/2017 01:50 PM Fees: $26.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARY #420



## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FORMERLY KNOWN AS COUNTRYWIDE HOME LOANS SERVICING, LP, WHOSE ADDRESS IS 4909 SAVARESE CIRCLE, TAMPA, FL 33634, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to SPECIALIZED LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 8742 LUCENT BLVD., STE 300, HIGHLAND RANCH, CO 80129 (303)895-2405, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by ARNELL PARKER AND SHAMONA ROKELMAN and recorded on 11/06/2006 as Doc # 2006-0815191 in the office of the RIVERSIDE County Recorder, CA.

Dated on   3 / 23 / 17   (MM/DD/YYYY)
BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FORMERLY KNOWN AS COUNTRYWIDE HOME LOANS SERVICING, LP

By: _Joseph Luis Rosario_
   Joseph Luis Rosario
   ASSISTANT VICE PRESIDENT

### ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH
The foregoing instrument was acknowledged before me on   3 / 23 / 17   (MM/DD/YYYY), by Joseph Luis Rosario as ASSISTANT VICE PRESIDENT of BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FORMERLY KNOWN AS COUNTRYWIDE HOME LOANS SERVICING, LP, who, as such ASSISTANT VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. (He/she/they is (are) personally known to me.

_Steven K. Sutton_
Steven K. Sutton
Notary Public - State of FLORIDA
Commission expires: 5/22/2020

STEVEN K. SUTTON
Notary Public, State of Florida
Commission# FF 934933
My comm. expires May 22, 2020

Document Prepared By: Julio Estrada, Bank of America, N.A. 4909 Savarese Circle, Tampa, FL 33634 (800) 444-4302
BOA01 398438447 MA13637  MIN MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 T211703-04:28:42 [C-1] FRMCA1

*D0023416217*

Branch :105   User :KALL

APN: 264-292-014-4
Recording Requested By
LSI Title Agency - FIS Default Solutions
Fidelity National Title

DOC # 2017-0342129
08/17/2017 03:52 PM Fees: $25.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: TERESA #134

When recorded, mail to:
Zieve, Brodnax & Steele, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606

TS No.: 17-48104

## SUBSTITUTION OF TRUSTEE

WHEREAS, ARNELL PARKER, AN UNMARRIED WOMAN AND SHAMONA BOKELMAN, AN UNMARRIED WOMAN was the original Trustor, and LSI A DIVISION OF CHICAGO TITLE INSURANCE CO was the original Trustee, and Mortgage Electronic Registration Systems, Inc., as nominee for GREENLIGHT FINANCIAL SERVICES its successors and assigns was the original Beneficiary under that certain Deed of Trust dated 10/26/2006 and recorded on 11/6/2006, under Instrument No. 2006-0815791 Official Records of Riverside County, California; and WHEREAS, Specialized Loan Servicing LLC , the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and instead of said original Trustee or previously substituted Trustee;

NOW, THEREFORE, the undersigned hereby substitutes Zieve, Brodnax & Steele, LLP, whose address is 30 Corporate Park, Suite #450, Irvine, California 92606 as Successor Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated:
AUG 0 8 2017

Specialized Loan Servicing LLC

By: Ami McKernan
Its: Second Assistant Vice President

State of Colorado
County of Douglas

The foregoing instrument was acknowledged before me this _____ AUG 0 8 2017 _____ by _____ Ami McKernan _____ of Specialized Loan Servicing LLC, a Delaware Limited Liability Company, on behalf of the LLC.

(Notary's official Signature)

(Commission Expiration)

AGNES BRADSHAW
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20084049359
MY COMMISSION EXPIRES 12/03/2020

EXHIBIT "H"

Branch :I05   User :KALL

(F)   "Note" means the promissory note signed by Borrower and dated   OCTOBER  28, 2008  . The Note states that Borrower
owes Lender   ONE HUNDRED SIXTY-NINE THOUSAND AND 00/100
Dollars (U.S. $    169,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay
the debt in full not later than   NOVEMBER 01, 2038  .
(G)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note,
and all sums due under this Security Instrument, plus interest.
(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be
executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ Other(s) [specify]             ☐ Biweekly Payment Rider

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that
are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar
paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale
transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(M)   "Escrow Items" means those items that are described in Section 3.
(N)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party
(other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property;
(ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any
amounts under Section 3 of this Security Instrument.
(Q)   "RESPA" means  the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulations,
Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or
regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and
restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally
related mortgage loan" under RESPA.
(R)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has
assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's
successors and assigns) and the successors and assigns of MERS,

Initials: _____

Branch :105   User :KALL

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of   RIVERSIDE
SEE ATTACHED EXHIBIT A

Assessor's Identification Number:  284-292-014-4
which currently has the address of   23151 SWAN STREET                        MORENO VALLEY
                                                        [Street]                                    [City]
California   92553
              [Zip Code]            ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.   Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds.  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the                  Initials: _____

Loan Number: 0156283282-58
CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3005 1/01
                                                          Page 3 of 15                                    C3005 (rev. 1/03)

Branch :105   User :KALL

Note: (a) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds

EXHIBIT "I"

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF RIVERSIDE
RIVERSIDE, CALIFORNIA

**CERTIFICATE OF DEATH**

3052016227245     3201633013335

| Field | Value |
|---|---|
| LAST NAME | PARKER |
| FIRST NAME | ARNELL |
| DATE OF BIRTH | 03/26/1949 |
| AGE | 67 |
| SEX | F |
| DATE OF DEATH | 11/16/2016 |
| TIME | 0108 |
| MARITAL STATUS | DIVORCED |
| RACE | BLACK |
| EDUCATION | HS GRADUATE |
| SSN | 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 |
| OCCUPATION | SOCIAL WORKER |
| KIND OF BUSINESS | COUNTY GOVERNMENT |
| YEARS IN OCCUPATION | 27 |
| RESIDENCE | 23767 SWAN ST |
| CITY | MORENO VALLEY |
| COUNTY | RIVERSIDE |
| ZIP | 92557 |
| YEARS IN COUNTY | 48 |
| STATE/COUNTRY | CA |
| INFORMANT | SHAMONA PARKER-BOKELMAN, DAUGHTER |
| INFORMANT ADDRESS | 23767 SWAN ST, MORENO VALLEY, CA 92557 |
| FATHER FIRST | JEFFERSON |
| FATHER LAST | MATHEWS |
| FATHER BIRTH STATE | TX |
| MOTHER FIRST | MILDRED |
| MOTHER LAST | STAFFORD |
| MOTHER BIRTH STATE | TX |
| DISPOSITION DATE | 11/23/2016 |
| PLACE OF FINAL DISPOSITION | CALVARY HILL CEMETERY, 3235 LOMBARDY LN, DALLAS, TX 75220 |
| EMBALMER | ROGER SLYTER |
| LICENSE | EMB8679 |
| FUNERAL ESTABLISHMENT | SIERRA MEMORIAL CHAPEL MORTUARY |
| LICENSE | FD 1139 |
| LOCAL REGISTRAR | CAMERON KAISER, MD |
| DATE | 11/22/2016 |

**PLACE OF DEATH:** KAISER FOUNDATION HOSPITAL-MORENO VALLEY
27300 IRIS AVE, MORENO VALLEY
CITY: RIVERSIDE

**CAUSE OF DEATH:**
A. SHOCK — DAYS
B. SEPSIS — DAYS
C. ADVANCED LUNG CANCER — MTHS

OTHER: RENAL FAILURE, PLEURAL EFFUSION

PHYSICIAN: BONEY MATTATHIETHU NINAN M.D. — A140190 — 11/22/2016
10800 MAGNOLIA AVENUE, RIVERSIDE, CA 92505
11/14/2016 — 11/16/2016

---

**CERTIFIED COPY OF VITAL RECORD**
STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

This is a true and exact reproduction of the document officially registered and placed on file in the office of the County of Riverside, Department of Public Health.

DATE ISSUED: Nov 23, 2016

CAL CAMERON KAISER, MD, COUNTY HEALTH OFFICER

001462224